UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

TARANEH F. MOMENI-KURIC                                          Plaintiff,

v.                                               Civil Action No. 3:18-cv-00197-RGJ

METROPOLITAN PROPERTY AND                                        Defendants
CASUALTY INSURANCE COMPANY;
METLIFE AUTO & HOME INSURANCE
AGENCY, INC. AND REISERT
INSURANCE, INC.

* * * * *

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on sixteen Motions *in Limine* and Objections to Admissibility filed by the parties. [DE 22, 34, 38, 47, 54-62, 64, 66, 77, 80, 82]. Briefing is complete, and these matters are ripe. Responses to the Motions *in Limine* and Objections to Admissibility and Reply Briefs in Support of Objections to Admissibility were also filed. [DE 23, 27, 65, 67, 69, 85, 88]. For the reasons below, Metropolitan's Motions *in Limine* [DE 54, 56, 57, 59, 62, 66] are **GRANTED,** Metropolitan's Motions *in Limine* [DE 55, 58, 60] are **DENIED**, Metropolitan's Motions *in Limine* [DE 22, 61, 64, 77, 80] are **GRANTED IN PART and DENIED IN PART**, Momeni-Kuric's Motion *in Limine* [DE 34] is **DENIED**, and Momeni-Kuric's Supplemental Motions *in Limine* [DE 38] are **GRANTED IN PART and DENIED IN PART**.

## I.    BACKGROUND

This case arises out of an automobile collision between Plaintiff, Dr. Taraneh Momeni-Kuric and Donna Thompson. [DE 1-2, State Ct. Rec., at 6, ¶ 2]. Momeni-Kuric sustained injuries from the collision. [*Id.* at 6, ¶ 3]. Momeni-Kuric filed litigation against Thompson. [*Id.* at 6, ¶

4]. The matter was settled with payment of the full liability limits of Thompson's insurance policy. [*Id.*]. Momeni-Kuric released Thompson and received payment in the amount of $250,000. [*Id.* at 7, ¶ 5].

At the time of the collision, Momeni-Kuric also held an insurance policy with the Metropolitan Property and Casualty Insurance Company ("Metropolitan") and Metlife Auto & Home Insurance Agency, Inc. ("Metlife"). [*Id.* at 7, ¶ 6]. After settling with Thompson, Momeni-Kuric sued Metropolitan, Metlife, and Reisert Insurance, Inc. ("Reisert")[1] in Jefferson County Circuit Court for under-insured motorists ("UIM") insurance coverage claiming bad faith, violations of the Unfair Claims Settlement Practices Act, violations of the Consumer Protection Act, breach of fiduciary obligations, and negligent misrepresentation. [DE 1-2]. Defendants MetLife and Reisert were dismissed with prejudice from the state court action. [DE 1, Notice of Removal at ¶ 2, DE 1-2 at 33, 35]. The state court then bifurcated the claims and held the bad faith and statutory claims in abeyance until determination of Momeni-Kuric's UIM claim. [DE 1-2 at 32].

Defendant removed the case to this Court on diversity jurisdiction. [DE 1 at 1]. This matter is set for jury trial on the bifurcated UIM claim. In advance of trial, parties have filed sixteen Motions *in Limine* and Objections to Admissibility.

## II.  LEGAL STANDARD.

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence *in limine* under their inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)). Yet, the "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds. *Sperberg v.*

---

[1] Reisert was the insurance agent who sold the Metropolitan and Metlife policies. [DE 1-2 at 8, ¶ 16].

*Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Courts favor this posture so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F.Supp.2d 702, 706 (E.D. Ky. 2010) (internal citations omitted). When this Court issues a ruling *in limine*, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce,* 713 F.2d 1236, 1239 (6th Cir.1983), *aff'd,* 469 U.S. 38 (1984)). Thus, the Court may alter or amend a prior *in limine* ruling at trial. *Luce,* 713 F.2d at 1239.

## III.   DISCUSSION

### A.   Metropolitan's Evidentiary Motions.

#### 1.   Defendant's Objection to Admissibility of Expert Testimony [DE 22].

Defendant moves to limit the opinion testimony of Plaintiff's witnesses, Dr. Attaway, Dr. Slone, and Dr. Price, on grounds that portions of their opinions do not satisfy Federal Rules of Evidence 701 and 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). [DE 22, at 1]. Defendant argues that these witnesses are not qualified to opine on whether Plaintiff's injuries from the automobile accident prevent her from practicing dentistry. [*Id.*]

Defendant also moves to exclude Dr. Price as an expert because he was not disclosed as an expert and has not provided a curriculum vitae or an expert report. [*Id*. at 2–3]. The Court agrees. Dr. Price appears as a lay witness on Plaintiff's witness list and was not previously disclosed as an expert. [DE 51, Pl Am. Witness List]. As a result, Dr. Price's testimony must be limited to that of a lay witness.

"Under Rule 702 of the Federal Rules of Evidence, 'a proposed expert's opinion is admissible . . . if the opinion satisfies three requirements. First, the witness must be qualified by knowledge, skill, experience, training, or education. Second the testimony must be relevant,

meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.'" *Burgett v. Troy-Bilt LLC*, 579 Fed. Appx. 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)). As to the expert's qualifications, the Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The Court must determine whether the witness is qualified to offer an opinion on the specific area of expertise. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at * 33 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge.") "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact." *Mannino v. International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). Thus, this Court need only determine if the expert witness has the minimal qualifications to express the expert opinion. *Id.*

Along with expert qualifications, "[t]he Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'" *Powell v. Tosh*, 942 F. Supp. 2d 678, 686 (W.D. Ky. 2013) (quoting *Daubert*, 509 U.S. at 597). To assist with this determination, the Supreme Court in *Daubert* laid out several factors[2] for the courts to

---

[2] The *Daubert* factors include "[w]hether a 'theory or technique . . . can be (and has been) tested'; [w]hether it 'has been subjected to peer review and publication'; [w]hether, in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999) (quoting *Daubert*, 509 U.S. at 592–594).

consider. *Daubert*, 509 U.S. at 592–594. Courts have "stressed, however, that *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. . . . In some cases . . ., the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience." *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding the *Daubert* factors "unhelpful" in a case involving "expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation") (internal citations omitted). "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* That said, admissible expert testimony must be based on more than subjective belief and unsupported speculation. *Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2015 WL 3970739, at *4 (W.D. Ky. June 30, 2015) (citing *Graham v. Am. Cyanamid, Co.*, 350 F.3d 496, 510 (6th Cir. 2003).

Defendant expects that Drs. Attaway and Slone will testify that Plaintiff cannot practice dentistry because of her physical limitations.[3] [DE 22 at 1–3]. Defendant argues that while Drs. Attaway and Slone will likely be qualified to opine on the practice of dentistry, they do not have the skills, training, or medical background to offer an expert opinion on whether Plaintiff can practice dentistry. [*Id.* at 6]. Defendant argues that any opinion would be based on "their comparisons of their personal experiences as practicing dentists with the physical complaints of Plaintiff detailed in her medical records and deposition testimony." [*Id.* at 7].

---

[3] Dr. Attaway states that, "[a]fter reviewing all of the documents, [she] cannot imagine that Dr. Momeni-Kuric could ever practice dentistry with her injuries and physical limitations." [DE 14-3, Dr. Attaway Expert Rep., at 1]. Likewise, Dr. Slone states that "Dr. Momeni-Kuric's symptoms would not allow her to perform [dentistry related] maneuvers, therefore, preventing her from practicing as an oral health care provider." [DE 14-4, Dr. Sloan Expert Rep., at 1].

Rule 702 allows experts to compare the facts in the case to his or her own experience to draw a conclusion. *See* Fed. R. Evid. 702. This type of expert testimony is widely admitted. *See First Tennessee Bank Nat. Ass'n*, 268 F.3d at 334–35 (finding an expert, opining on whether the standard of care was met in a bank contract dispute, was qualified to give opinion based on his "technical or specialized knowledge" where he had over 40 years of experience in the banking industry and held various positions at several different banks).

However, it is improper for Drs. Attaway and Slone to "evaluate Plaintiff's claimed injuries and determine her physical capabilities." [DE 22 at 6]. They are not medical doctors, and thus, do not have this expertise. [*Id.*]. That said, Drs. Attaway and Sloan can rely on the testimony of other experts and Plaintiff to understand Plaintiff's physical limitations. *See Eaves v. United States*, No. 4:07CV-118-M, 2009 WL 3754176, at *9 (W.D. Ky. Nov. 5, 2009) ("The number of sources on which experts in various fields of expertise might reasonably rely to obtain information for the formation of opinions and inferences is virtually infinite. A few of those that the courts have considered with regularity are the following . . . . opinions of other experts.") (quoting Weinstein & Berger, Weinstein's Federal Evidence § 703.04).

In fact, vocational experts often rely on medical expert opinions in opining on an individual's employment opportunities. *See, e.g.*, *Sturgeon v. Astrue,* No. 1:07CV74-J, 2007 WL 4365398, at *4 (W.D. Ky. Dec. 12, 2007). In those cases, the vocational expert does not have the medical knowledge to determine the limitations of the person being evaluated but must base his or her opinion on the limitations described by the medical opinions. Thus, if they base their opinions about Plaintiff's physical limitations on the testimony of other experts, Drs. Attaway and Sloan, like a vocational expert, can opine on whether Plaintiff can practice dentistry based on their specialized knowledge and understanding of what it requires to be a practicing dentist. However,

it is premature for the Court to rule on this issue. Whether Drs. Attaway and Sloan may opine on Plaintiff's ability to practice dentistry depends upon the foundation for their opinions which is developed at trial, including the opinions of other expert witnesses.

For these reasons, Defendant's Objection to Admissibility of Expert Testimony [DE 22] is **DENIED** at this time as to Drs. Sloan and Attaway and **GRANTED** as to Dr. Price.

### 2. Defendant's Motion *in Limine* for Exclusion of Witnesses Pursuant to FRE 615 [DE 54].

Plaintiff does not object to excluding witnesses under FRE 615. [DE 69, Pl.'s Resp. to Def.'s Mot. *in Limine*, at 1; DE 86 Tr. July 22, 2019 at 24:8–15]. As a result, this Motion *in Limine* [DE 54] is **GRANTED**.

### 3. Defendant's Motion *in Limine* to Exclude Open Testimony of Lay Witnesses Related to Medical Conditions, Medical Treatment, and Causation [DE 55].

Defendant seeks to preclude Plaintiff and any lay witnesses from testifying about the "causal connection between the incident and Plaintiff's claimed injury, about any causal connection between the incident and the treatment, and about any medical diagnoses or causation opinions." [DE 47, Def.'s Mot. *in Limine*, at 2]. Defendant alleges that this type of testimony by a lay witness would be improper under Fed. R. Evid. 701 and 802. [*Id.*]. Defendant argues that because a lay witness would not have the medical expertise to determine the cause of Plaintiff's injuries or the appropriate treatment, any such testimony would be improper expert testimony or based on hearsay. [*Id.* at 3–4]. Plaintiff argues that prohibiting all testimony of this type is too broad and improperly encompasses permissible testimony, such as the witnesses' own first-hand knowledge. [DE 69 at 2–3].

Expert testimony is needed to prove causation of medical injuries. *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-189-DJH-RSE, 2018 WL 4643190, at *3 (W.D. Ky. Sept. 27, 2018). That

said, when "causation is so apparent that lay members of the jury could easily determine whether and to what extent the defendant's conduct caused the plaintiff's injuries—the so-called layman's exception"— courts permit lay witness testimony about causation. *Id.* (internal citations omitted). Additionally, there are many circumstances in which a lay witness may testify about their own injuries or injuries they personally observed either through their own perceptions or a hearsay exception. *See generally* Fed. R. Evid. 701, 803.

The Court cannot exclude this testimony without the benefit of hearing it developed at trial. As a result, Defendant's Motion *in Limine* to Exclude Testimony of Lay Witnesses Related to Medical Conditions, Medical Treatment, and Causation [DE 55] is **DENIED**.

### 4. Defendant's Motion *in Limine* to Preclude Introduction of Medical Records and/or Medical Billing not Produced in Discovery and Testimony Regarding the Same [DE 56].

Plaintiff does not object to excluding medical records and/or medical billing not produced in discovery and testimony about the same. [DE 69 at 3; DE 86 Tr. July 22, 2019 at 30:6–10]. As a result, Defendant's Motion *in Limine* to Preclude Introduction of Medical Records and/or Medical Billing not Produced in Discovery and Testimony Regarding the Same [DE 56] is **GRANTED.**

### 5. Defendant's Motion *in Limine* to Limit Testimony of Effect of Plaintiff's Alleged Injuries on Her Spouse [DE 57].

Defendant anticipates Plaintiff's husband, Kyle Kuric, will testify about the effect of Plaintiff's injuries on their marriage and marital relations. [DE 47 at 7–8]. Since Plaintiff has not sought damages for loss of consortium, Defendant argues that Mr. Kuric's testimony in this regard would be marginally relevant but "runs the risk of a jury award based on sympathy for the couple and their relationship instead of an award based on the claims actually asserted in this litigation." [DE 47 at 8]. Thus, Defendant argues that testimony about the effect of the injury on Plaintiff's

marriage should be limited as the probative value is outweighed by prejudice. [*Id.*]. Plaintiff responds that Mr. Kuric's anticipated testimony would be relevant to and probative of Plaintiff's own pain and suffering, not just his own. [DE 69 at 3–4].

Generally, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. To the extent that Mr. Kuric's testimony implicates the effect of Plaintiff's injuries on the marriage or Mr. Kruic, its probative value is outweighed by the risk of unfair prejudice. The Court will limit his testimony to the effects of the injury on Plaintiff and not to the effects on Mr. Kuric. Thus, Defendant's Motion *in Limine* to Limit Testimony of Effect of Plaintiff's Alleged Injuries on Her Spouse [DE 57] is **GRANTED**.

### 6. Defendant's Motion *in Limine* to Exclude Claimed Damages for Pain and Suffering as Untimely [DE 58].

Defendant argues that Plaintiff failed to timely disclose the amount of her claimed damages for pain and suffering. [DE 47 at 8–11]. As a result, Defendant was not on notice that this category of damages was being claimed at all or the amount of damages claimed until Plaintiff served her Supplemental Responses to Defendant's Interrogatories on June 26, 2019. [DE 47 at 12, DE 35, Pl.'s Suppl. Resp. to Def.'s Interrog.]. Defendant argues that this disclosure was untimely because it was not included in Plaintiff's initial disclosures or initial discovery responses served on December 20, 2017 and she failed to comply with the Court's order requiring supplemental disclosures by Dec. 3, 2018. [DE 47 at 9–13].

Plaintiff responds that she referred to her pain and suffering claim in the initial complaint and discussed her pain and suffering in her deposition. [DE 69 at 4–5]. Thus, Defendant was on notice of Plaintiff's intention to seek pain and suffering damages. [*Id.* at 4]. Plaintiff asserts that she did not include pain and suffering damages in any of her later filings because this type of

damages is difficult to calculate except through testimony. [*Id.*]. Plaintiff also argues that Defendant has suffered no prejudice because she disclosed an estimate of her pain and suffering damages more than 30 days before trial, and Defendant will have the opportunity to challenge Plaintiff's claimed damages through cross-examination and argument at trial. [*Id.* at 4–5].

Parties must provide "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26 (a)(1)(A)(iii). If a party fails to make the appropriate disclosure, among other remedies "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Generally, "courts have found that '[b]ecause 'non-economic damages based on pain and suffering . . . are generally not amenable to the type of disclosures contemplated by Rule 26(a)(1)(A)(iii),' a party's failure to disclose a calculation for damages is substantially justified or, . . . it qualifies as 'a reasonable explanation.' Furthermore, '[p]unitive damages, like damages for emotional suffering, are not amenable to the requirements of Rule 26(a)(1)(A)(iii).'" *Odom v. Thompson*, No. 5:13-CV-211-TBR, 2017 WL 6522072, at *3 (W.D. Ky. Dec. 19, 2017) (citing *Scheel v. Harris*, No. 3:11-17-DCR, 2012 WL 3879279, at *7 (E.D. Ky. Sept. 6, 2012)).

Plaintiff provided an estimate of damages to Defendant more than 30 days before trial. While delayed, Defendant was not prejudiced. Plaintiff discussed her pain and suffering at her deposition and many of the parties' depositions took place after the disclosure, including her husband's. [DE 63, Not. of Depo., Kyle Kuric, 68, Not. of Depo., Dr. John Gilbert, 81, Not. of Rescheduling Depo., Dr. Francis McDonnell]. Furthermore, Defendant could have sought to reopen discovery and re-depose Plaintiff or any other necessary witness but did not. Defendant will be able to cross-examine Plaintiff and any other relevant witness on Plaintiff's pain or

suffering at trial. For these reasons, Defendant's Motion *in Limine* to Exclude Claimed Damages for Pain and Suffering as Untimely [DE 58] is **DENIED**.

### 7. Defendant's Motion *in Limine* to Exclude Claim for Nanny Expenses [DE 59].

Plaintiff does not object to excluding the claim for nanny expenses. [DE 69 at 5; DE 86 Tr. July 22, 2019 at 39:17–18]. For this reason, Defendant's *Motion in Limine* to Exclude Claim for Nanny Expenses [DE 59] is **GRANTED AS MOOT**.

### 8. Motion *in Limine* to Exclude or Limit Evidence of Claimed Loss of Income or Impairment and to Limit or Exclude Testimony of Experts [DE 60]

Defendant moves to exclude testimony of Plaintiff's claimed loss of income on two grounds: (1) that Plaintiff, as a lay witness, cannot discuss what she believes she could have earned as a dentist because she has no first-hand knowledge [DE 47 at 21]; and (2) that Plaintiff's experts' opinions on this issue are speculative and not based on sufficient data. [*Id.* at 23–29].

According to Defendant, Plaintiff never worked fulltime practicing dentistry and does not remember what she was paid during the brief time she worked as a dentist. [*Id.* at 21–22]. Plaintiff's counsel represented at the final pretrial conference that counsel does not plan to use any documents to refresh Plaintiff's recollection of her pay [DE 86 Tr. July 22, 2019 at 40:18–25], and Plaintiff stated in her deposition that she held no other paid positions after being licensed as a dentist. [DE 47 at 21–22].

In general, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Absent further evidence, the Plaintiff lacks personal knowledge to testify on this issue; however, the Court will defer ruling on this issue until it is further developed at trial.

Second, Defendant argues that the testimony of Dr. Roebker, Plaintiff's vocational expert and Dr. Baldwin, Plaintiff's economic expert, must be limited because their testimony is speculative and not based on sufficient data. Defendant challenges:

i. Dr. Roebker's opinion that Plaintiff's mental health or emotional issues prevent Plaintiff from working because the data for this opinion was obtained in 2016. [DE 47 at 25–26].

ii. Dr. Roebker's opinion that Plaintiff cannot perform 90% of all potential jobs because it is based on an outdated and overinclusive 20-year-old compilation. [*Id.* at 26–27].

iii. Dr. Baldwin's use of insidermonkey.com as a basis for dental salaries in Spain because there is no basis to believe insidermonkey.com is reliable. [*Id.* at 27–28].

iv. Dr. Baldwin's reliance on average Kentucky figures for dentist earnings instead of figures for Louisville, Kentucky where Plaintiff said she planned to live. [*Id.* at 28–29].

Each of Defendant's objections concerns the accuracy of the data on which Plaintiff's experts relied. Objections to the admissibility of expert testimony based on the accuracy of the data typically will be denied because they go to the weight of the evidence not to admissibility. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008) (finding it was not an abuse of discretion for district court to admit expert testimony where the objection to its admission "fundamentally confuses the *credibility and accuracy* of [the expert's] opinion with its *reliability*. . . . [A] determination that proffered expert testimony is reliable does not indicate, in any way, the correctness or truthfulness of such an opinion.") (emphasis in original).

For example, Defendant's objections to the admission of Dr. Roebker's testimony go to the data he relied on and not the method for his conclusion. Typically, vocational experts may rely on a variety of sources in determining vocational potential. *See, e.g.*, *Ellison v. Comm'r of Soc. Sec.*, 101 F. App'x 994, 996 (6th Cir. 2004) (finding a vocational expert could rely on sources other than Dictionary of Occupational Titles, including her own experience, in evaluating vocational potential). Objections related to inherent assumptions in a vocational expert's

testimony go to its weight, not its admissibility. *See Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2016 WL 3680861, at *3 (W.D. Ky. July 7, 2016) (finding objections to the admissibility of the vocational expert's testimony because expert relied on speculative information went to the weight of the expert testimony not its admissibility).

Defendant's objections to Dr. Baldwin's use of insidermonkey.com and his reliance on average Kentucky figures for dentist earnings also go to the weight of his opinion, not its admissibility. *See Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 727–28 (6th 2012); *see also Static Control Components, Inc. v. Lexmark Intern., Inc.*, Nos. 5:02–571, 5:04–84, 2007 WL 7083655, at *17 (E.D. Ky. May 12, 2007) (finding use of a Google search to select samples for survey used to calculate data in expert report, "may be an ultimate mathematical infirmary in this survey, [defendant] is capable of effectively countering the weight to be given to this survey"). As a result, Defendant's Motion *in Limine* to Exclude or Limit Evidence of Claimed Loss of Income or Impairment and to Limit or Exclude Testimony of Experts [DE 60] is **DENIED**.

9. **Defendant's *Motion in Limine* to Preclude Characterization of Case as One for Breach of Contract, Exclude Evidence of Policy Provisions and Premium Payments, and Limit Overemphasis of Insurance [DE 61].**

Defendant argues that because it "has not denied that Plaintiff would be entitled to UIM insurance benefits if her damages exceed the sums already recovered by Plaintiff" the only element of the UIM claim that Plaintiff must establish is the amount of damages sustained. [DE 47 at 30]. For that reason, this case is a "declaratory action" rather than a "breach of contract." [*Id.* at 30–31 (citing *State Farm Mutual Automobile Insurance Company v. Riggs*, 484 S.W.3d 724, 730 n.25 (Ky. 2016))]. Defendant also argues that provisions of the contract, itself, are irrelevant or only minimally relevant to the issue here and extended discussion of the policy would be prejudicial. [*Id.* at 32]. Plaintiff, in response, agrees that this case is about the amount of Plaintiff's damages

and argues that "[t]he nature of the claim, including the amount of UIM coverage, is essential for the jury to understand why Plaintiff is entitled to bring this claim." [DE 69 at 6].

Defendant states that "Plaintiff would be entitled to UIM insurance benefits if her damages exceed the sums already recovered by Plaintiff from Ms. Thompson's liability insurer and the sums paid on Plaintiff's behalf as basic reparations benefits." [DE 47 at 30]. The only issue at trial is the amount of damages incurred by Plaintiff as the remaining issues of the bad faith and statutory claims have been bifurcated. [DE 1-2 at 32]. Thus, whether Defendant breached the insurance contract is not at issue, and characterization of this claim as a breach of contract would be improper. *See State Farm Mutual Automobile Insurance Company v. Riggs*, 484 S.W.3d 724, 730 n.25 (Ky. 2016). As a result, the Plaintiff may not characterize this case as one for breach of contract.

While the policy terms and premiums may be relevant to some of Plaintiff's claims, the only issue currently before the Court is Plaintiff's UIM claim. [DE 1-2 at 32]. Thus, for that evidence to be admissible, Plaintiff must show that it is relevant to the amount of Plaintiff's damages. It is impossible, in the abstract, for the Court to determine every scenario in which references to these facts would be relevant, and thus cannot conduct a Rule 403 analysis. As a result, Defendant's *Motion in Limine* to Preclude Characterization of Case as One for Breach of Contract, Exclude Evidence of Policy Provisions and Premium Payments, and Limit Overemphasis of Insurance [DE 61] is **GRANTED IN PART and DENIED IN PART**.

### 10. Defendant's Motion *in Limine* to Preclude Use of Exhibits or Multimedia or Argument in *Voir Dire* or Opening Statement [DE 62].

Plaintiff does not object to precluding the use of exhibits or multimedia or argument in *voir dire* or opening statement. [DE 69 at 7; DE 86 Tr. July 22, 2019 at 50:9–14]. Therefore,

Defendant's Motion *in Limine* to Preclude Use of Exhibits or Multimedia or Argument in *Voir Dire* or Opening Statement [DE 62] is **GRANTED AS MOOT**.

### 11. Defendant's Objection to Exhibit List [DE 64].

Defendant objects to the admission of the reports and curricula vitae of the expert witnesses as well as the videos of several routine dental procedures [DE 64] listed on Plaintiff's exhibit list [DE 39, Pl. Ex. List].

Defendant asserts that the reports and curricula vitae of the expert witnesses are hearsay. [DE 64 at 1]. Typically, "[a]n expert's report is hearsay and therefore inadmissible." *Stansbury v. Hopkins Hardwoods, Inc.*, No. 4:15-CV-00016-JHM, 2018 WL 2977439, at *2 (W.D. Ky. Mar. 2, 2018) (internal citations omitted). Plaintiff asserts no basis under which its experts' reports and curricula vitae would fall into one of the exceptions to hearsay. As a result, the parties' experts' reports are inadmissible as evidence in this trial and Defendant's objection to admission of same will be granted

Defendant asserts that the "[v]ideos of several routine dental procedures" in Plaintiff's exhibit list [DE 39 at 1, ¶ 9], are also inadmissible hearsay. Defendant's objection depends on how Plaintiff plans to present the videos. If Plaintiff presents the videos as a demonstrative exhibit to assist Plaintiff's dental expert in her testimony and Plaintiff's expert will explain the content, then Defendant will be able to cross-examine Plaintiff's expert on the videos.

If the videos are being offered as evidence, then the Court must determine whether they fall within a hearsay exception. In general, a video that shows how a medical procedure is performed is "an assertion of proper medical performance and is, therefore, a statement under Rule 801(a) of the Federal Rules of Evidence." *U.S. v. Martinez,* 588 F.3d 301, 311 (6th Cir. 2009). That said, the Court can admit educational videos under the learned treatise hearsay exception.

*See* Fed. R. Evid. 803 (18); *see, e.g.*, *Costantino v. Herzog*, 203 F.3d 164, 170–71 (2d Cir. 2000) (finding training video from the audiovisual library of the American College of Obstetricians and Gynecologists qualified as a learned treatise). For a video to fall within this exception the video must contain the characteristics of a learned treatise. *See U.S. v. Martinez,* 588 F.3d 301, 312 (6th Cir. 2009). The proponent for admission must show that the video contains the appropriate indicia of reliability. *See id.* (finding that a video of a routine medical procedure prepared for the purpose of trial and narrated by the expert witness lacked the appropriate indicia of reliability where the video was "prepared for and given to the FBI for litigation purposes, it was not subjected to peer review or public scrutiny, and it was not written primarily for professionals ... with the reputation of the writer at stake") (internal citations omitted).

At trial, the Court will determine whether Plaintiff has laid a sufficient foundation for admissibility of the videos.[4] As a result, at this time, Defendant's Objections to the Admission of the Reports and Curricula Vitae of the Expert Witnesses and Videos of Several Routine Dental Procedures as Exhibits [DE 64] are **GRANTED IN PART and DENIED IN PART**.

### 12. Defendant's Objection to Witness List. [DE 66].

Plaintiff objects to the admissibility Dr. Changaris's expert testimony at trial because Defendant did not timely disclose him as an expert witness. [DE 66 at 4–7]. The deadline to disclose expert witnesses was September 4, 2018. [DE 12, Scheduling Order]. Plaintiff did not list Dr. Changaris on its expert disclosures or its later witness list. [DE 14, Pl.'s CR 26 Disclosure, 26, Pl.'s Expert Witness Disclosure, 36, Pl.'s Witness List]. Additionally, Plaintiff's counsel confirmed in an email, dated December 20, 2018, that they did not intend to call Dr. Changaris as an expert witness. [DE 66-2]. On June 27, 2019, for the first time, Plaintiff disclosed Dr.

---

[4] On July 22, 2019, at the parties' final pretrial conference "counsel for the plaintiff was ordered to turn over the demonstrative dental video to defense counsel by the close of business." [DE 83].

Changaris as an expert witness in a supplemental disclosure and suggested that Plaintiff would provide Dr. Changaris's expert report to Defense counsel. [DE 40]. Plaintiff has never provided an expert report for Dr. Changaris. [DE 66 at 7].

The Federal Rules require parties to disclose the identity of any expert witness in accordance with the Rules and the schedule set by the Court. *See* Fed. R. Civ. P. 26(a), (e). If a party fails to do so, Rule 37 allows the Court to exclude that information or witness, unless the failure was substantially justified or is harmless. Yet, "[u]nlike expert testimony, parties are not required to meet the strict standards of Fed. R. Civ. P. 26(a)(2) to rely on the testimony of lay witnesses," and the failure to disclose an expert witness would not necessarily prohibit the witness from testifying as a fact witness. *Lawton v. Hamilton Beach Brands, Inc.*, No. 4:16-CV-00049-JHM, 2018 WL 1189401, at *1 (W.D. Ky. Mar. 7, 2018) (finding that witness could not testify as expert where party missed the expert witness disclosure deadline by one month and 19 days).

Plaintiff did not identify Dr. Changaris as an expert witness in its initial disclosure and did not supplement its initial disclosure until 11 months after the deadline to disclose expert witnesses. As a result, Defendant will be prejudiced if the Court permits Dr. Changaris to testify as an expert. The Court notes that counsel for Plaintiff stated at the final pretrial conference that Plaintiff does not intend to call Dr. Changaris. [DE 86 Tr. July 22, 2019 at 57:6–10]. In the event that Plaintiff calls, Dr. Changaris as a witness, his testimony will be limited to that of a lay witness. Defendant's Objection to Plaintiff's Witness List [DE 66] is **GRANTED**.

### 13. Defendant's Objections to Portions of Dr. Gilbert's Deposition Testimony [DE 77].

Defendant argues that Plaintiff is trying to impermissibly introduce opinion testimony and reports from Plaintiff's experts through the videotaped deposition of Defendant's expert, Dr. Gilbert. [DE 77 at 2]. Dr. Gilbert will be unavailable at trial. In support of their motion, Defendant

submitted the transcript of Dr. Gilbert's testimony [DE 82-1], portions of which Defendant anticipates playing for the jury at trial.

Generally, "[a]n expert's report is hearsay and therefore inadmissible [and] . . . remains inadmissible if his testimony is instead presented through his deposition." *Stansbury*, 2018 WL 2977439, at *2 (internal citations omitted). Thus, the expert reports at issue are inadmissible.

Defendant also argues that Plaintiff's counsel's reading or summarizing of the expert reports of Dr. Changaris, Dr. McDonnell, Dr. Alt, Dr. Attaway and Dr. Slone during the cross-examination of Dr. Gilbert constitutes hearsay. [DE 77 at 2–3].[5] Plaintiff argues that Dr. Gilbert stated in his report and testified that he relied on the expert reports of Dr. Changaris, Dr. McDonnell, Dr. Warren, Dr. Alt, and Drs. Attaway and Slone, and that "the clear intent of this line of questioning in cross-examination was to expose Dr. Gilbert's bias in his evaluation." [DE 85 at 5].

It is permissible for an expert to rely on otherwise inadmissible hearsay, including other experts, to support his or her opinion. *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994). "Rules 702 and 703 do not, however, permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible." *Id.*; *see also*, *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2006) (finding that the district court erred when it allowed expert to testify about the conclusions of another expert and to use the similarity in conclusion of that expert to his own to bolster his opinion). Instead, an expert witness can use this testimony to "explain the basis of the

---

[5] Defendant acknowledges that "Plaintiff's counsel did not ask Dr. Gilbert any questions regarding Dr. Warren's report." [DE 82, Def. Obj. to Portions of Depo. Test. of Dr. Gilbert, at 3]. Nor were parts of Dr. Warren's report read into the record. [DE 82-1]. Instead, Plaintiff's counsel "merely" asked whether the report was helpful to Dr. Gilbert in reaching his conclusion and then admitted it. [DE 82, at 3–4]. Therefore, as it pertains to Dr. Warren, only the admission of his report is at issue. As the Court found, expert reports are hearsay and inadmissible.

expert's opinion," and "[w]hen inadmissible materials are admitted for explanatory purposes, the opposing party is entitled to a limiting instruction to the jury that the evidence may be considered solely as a basis for the expert opinion and not as substantive evidence." *Engebretsen*, 21 F.3d at 728–29 (internal citations omitted); *see also Wilson By & Through Wilson v. Merrell Dow Pharm. Inc.*, 893 F.2d 1149, 1153 (10th Cir. 1990) ("We have interpreted Rule 703 as allowing an expert to reveal the basis of his testimony during direct examination, even if this basis is hearsay, provided that the facts or data underlying his conclusions are of a type reasonably relied upon by others in his field of expertise. . . . The hearsay is admitted for the limited purpose of informing the jury of the basis of the expert's opinion and not for proving the truth of the matter asserted.) (internal citations omitted). Courts also generally allow the opinions of other experts to be explored on cross-examination to determine the opinions the experts reviewed and the extent to which he relied on them. *See Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 157 (4th Cir. 1995) ("Once [the expert] testified that he had read and rejected the other experts'' out-of-court opinions on the source of the fire, defendants were free to explore the basis for that disagreement and to attempt to discredit [the expert's] conclusion."); *Ratliff v. Schiber Truck Co.,* 150 F.3d 949, 955 (8th Cir. 1998) (allowing examination on report where expert testified that he read the report prior to submitting his own because "counsel was free to cross-examine the expert as to all documents he reviewed in establishing his opinion"). Experts "may be cross-examined with respect to material reviewed by the expert but upon which the expert does not rely." § 705:3 Cross-examining expert witness, 6 Handbook of Fed. Evid. § 705:3 (8th ed.); *see also Ratliff*, 150 F.3d at 955 (admitting testimony where expert was questioned about otherwise inadmissible hearsay materials, which he "read" and then "rejected.").

Dr. Changaris, Dr. McDonnell, Dr. Alt, Dr. Attaway, and Dr. Slone are on Plaintiff's witness list. [DE 51, Pl.'s Am. Witness List]. As a result, any of these witnesses could be called at trial and this objection, based on hearsay, would be moot.

The Court notes, however, that even if the experts do not testify at trial, Defendant's objections will be denied. Plaintiff states that his purpose in asking the questions was to explore the basis of Dr. Gilbert's opinion and the sources on which he relied. [DE 85 at 5]. As a result, disclosing the opinions of the experts on which he relied is appropriate. *See Williams v. Illinois*, 567 U.S. 50, 78 (2012) ("The purpose of disclosing the facts on which the expert relied is . . . to show that the expert's reasoning was not illogical, and that the weight of the expert's opinion does not depend on factual premises unsupported by other evidence in the record").

Defendant argues that because the testimony elicited by Plaintiff's counsel showed that the reports of Dr. Gilbert and Plaintiff's own experts were similar, Plaintiff's counsel's purpose in eliciting that testimony was to "bolster" his own experts' opinions, which would be impermissible under *Mike's Train House, Inc. v. Lionel, L.L.C.*. [DE 88 at 3–4] (citing 472 F.3d at 409). Defendant's argument is misplaced. *Mike's Train House, Inc. v. Lionel, L.L.C.* dealt with the use of non-testifying expert testimony where the conclusions of the non-testifying experts and the testifying expert were "essentially the same." 472 F.3d at 409 (quoting *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir.1994)). Here, Plaintiff's stated purpose was not to show that the conclusions were similar, but to show that "despite having similar examination findings, Dr. Gilbert testified and wrote in his report that he reached *different* conclusions." [DE 85 at 5] (emphasis added). Under these circumstances, it is appropriate for an expert to testify about non-testifying witness's opinions.[6] *See Vodusek*, 71 F.3d at 157.

---

[6] Defendant also argues that Dr. Gilbert did not actually rely on the reports of the other experts. [DE 88 at 4]. While experts may be cross-examined on materials on which they did not rely (*see* § 705:3 Cross-

20

Thus, Defendant's Objections to Portions of Dr. Gilbert's Deposition Testimony [DE 77] is **GRANTED IN PART and DENIED IN PART**.

### 14. Defendant's Motion to Preclude Testimony Concerning the Reports of Other Medical Experts at the Deposition of Plaintiff's Expert, Dr. Francis McDonnell [DE 80].

Defendant expects that Plaintiff's counsel will seek to introduce the reports and opinions of other, non-testifying experts through the testimony of Dr. Francis McDonnell. [DE 80 at 1]. Just as with Dr. Gilbert, Dr. McDonnell will testify by videotaped deposition. [DE 81]. The same principles that govern the admissibility of the non-testifying expert opinions through the expert testimony of Dr. Gilbert apply here. Therefore, the expert reports are inadmissible, but, it is premature for the Court to rule as to the admissibility of Dr. McDonnell's testimony. For that reason, Defendant's Motion to Preclude Testimony Concerning the Reports of Other Medical Experts at the Deposition of Plaintiff's Expert, Dr. Francis McDonnell [DE 80] is **GRANTED IN PART and DENIED IN PART**.

### B. Momeni-Kuric's Motions *in Limine*.

### 1. Plaintiff's Motion *in Limine* to Limit the Testimony of John W. Gilbert, M.D. [DE 34].

Plaintiff asserts that Dr. Gilbert, Defendant's medical expert, cannot testify about Plaintiff's ability to practice dentistry because he lacks the education, training, and experience as a practicing dentist. [DE 34-1 at 3]. Plaintiff argues that Dr. Gilbert's testimony on this topic is not permitted under Fed. R. Evid. 702 and is not based on reliable scientific, or specialized

---

examining expert witness, 6 Handbook of Fed. Evid. § 705:3 (8th ed.)), Dr. Gilbert's testimony suggests that he did, in fact, rely on the reports. Dr. Gilbert testified that he relied on certain parts of Plaintiff's medical record more than the expert reports [DE 82-1 Tr. July 17, 2019 13:18–19], but he both referenced the reports in his expert report [DE 21-1 at 1] and testified that he reviewed each of the experts' reports before writing his own [*Id.* at 12:15–20, 32:8–17, 34:25–35:6, 37:5–7, 37:24–38:2, 46:15–47:9]. He also testified that he relied "on the documents that [he] reviewed in forming [his] opinions in this case." [*Id.* at 12:15–13:19].

knowledge, required by *Daubert v. Merrell Dowell Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). [*Id.*].

Dr. Gilbert is a practicing neurosurgeon who performed a physical exam of Plaintiff and reviewed her prior medical records and expert opinion reports. [DE 82-1Tr. July 17, 2019 at 7:6–19, 11:2–4, 32:8, 34:25, 37:5, 37:24, 41:13]. He also performs independent medical exams ("IME") for the Department of Workers' Claims in Kentucky and provides opinions on whether an individual has a restriction and categorizes it as "sedentary or light or moderate or heavy and what I think they can do." [*Id.* at 10:9–15, 9:24–10:8]. He testified that it was a regular part of a neurosurgeon's practice to "place restrictions on patients either for work or physical limitations" [*Id.* at 10:16–22], and that he relied on the Department of Labor's definitions for the various categories and levels of work. [*Id.* at 49:13–17]. Dr. Gilbert has experience treating and evaluating medical providers, including dentists. [*Id.* at 53:18–54:1].

Dr. Gilbert has performed IMEs of dentists as a part of his work with the Department of Workers' Claims in Kentucky. According to Dr. Gilbert, similar assessments are routine in the practice of neurosurgery. As a result, his testimony meets the test for admissibility. Plaintiff's objection to Dr. Gilbert's limited experience with dentists and knowledge of dental practice goes to weight and is an appropriate topic for cross-examination. Plaintiff's Motion *in Limine to Limit* the Testimony of John W. Gilbert, M.D. [DE 34] is thus **DENIED**.

### 2. Plaintiff's Supplemental Motion *in Limine* to exclude testimony that any of Plaintiff's losses have been paid by a collateral source [DE 38].

Defendant does not object to excluding testimony about payment of losses by a collateral source. [DE 65 at 1; DE 86 Tr. July 22, 2019 at 18:3–7]. Thus, Plaintiff's Supplemental Motion *in Limine* to Exclude Testimony That Any of Plaintiff's Losses Have Been Paid by a Collateral Source [DE 38] is **GRANTED AS MOOT**.

### 3. Plaintiff's Supplemental Motion *in Limine* to Exclude Testimony That Any Future Damage Award Should Be Reduced to Present Value [DE 38].

Plaintiff moves the Court to exclude testimony that the damage award should be reduced to "present value." Yet Plaintiff's expert, Dr. Baldwin, attached a table to his report entitled "Projected Present Value of Loss of Earning Capacity" computing loss of earning capacity in "present value dollars." [DE 14-2 at 8]. To the extent Plaintiff distinguishes "present value" and "present value dollars," Plaintiff's expert used both terms in his report. [DE 14-2 at 2, 7 n.2, 8]. For that reason, it would be highly prejudicial (likely to both parties) to exclude any testimony about "present value" and Plaintiff's Supplemental Motion *in Limine* to Exclude Testimony That Any Future Damage Award Should Be Reduced to Present Value [DE 38] is **DENIED**.

### 4. Plaintiff's Supplemental Motion *in Limine* to Exclude Testimony That Any Damage Award Is Free of Federal and State Income Tax [DE 38]

Defendant does not object to excluding testimony that any damage award is free of Federal and State income tax. [DE 65 at 3, DE 86 Tr. July 22, 2019 at 23:11-16]. As a result, Plaintiff's Supplemental Motion *in Limine* to Exclude Testimony That Any Damage Award Is Free of Federal and State Income Tax [DE 38] is **GRANTED AS MOOT**.

### 5. Plaintiff's Supplemental Motion *in Limine* to Preclude the Introduction of Medical Records or Similar Documents Except When Introduced Through a Witness Qualified to Comment Upon or Explain Such Documents [DE 38]

Defendant does not object to precluding of medical records or similar documents unless introduced through a witness qualified to comment upon or explain such documents. [DE 65, Def. Resp. to Pl. Supp. Mot. *in Limine*, at 3; DE 86 Tr. July 22, 2019 at 23:17–25]. Thus, Plaintiff's Supplemental Motion *in Limine* to Preclude the Introduction of Medical Records or Similar Documents Except When Introduced Through a Witness Qualified to Comment Upon or Explain Such Documents [DE 38] is **GRANTED AS MOOT**.

**IV.    CONCLUSION**

Having thus considered the parties filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that Metropolitan's Motions *in Limine* [DE 54, 56, 57, 59, 62, 66] are **GRANTED,** Metropolitan's Motions *in Limine* [DE 55, 58, 60] are **DENIED**, Metropolitan's Motions *in Limine* [DE 22, 61, 64, 77, 80] are **GRANTED IN PART and DENIED IN PART**,  Momeni-Kuric's Motion *in Limine* [DE 34] is **DENIED**, and Momeni-Kuric's Supplemental Motions *in Limine* [DE 38] are **GRANTED IN PART and DENIED IN PART**.

Cc:    Counsel of record

Rebecca Grady Jennings, District Judge
United States District Court

July 29, 2019